**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| KEONDREA JOHNSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil No. 4:26-cv-00090-ALM** |
| | § | |
| NATIONAL CREDIT SYSTEMS, INC., | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., EQUIFAX | § | |
| INFORMATION SERVICES, LLC, and | § | |
| TRANS UNION, LLC, | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF KEONDREA JOHNSON'S RESPONSE IN OPPOSITION TO
DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S RULE 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS**

**I. INTRODUCTION**

NCS's Motion for Judgment on the Pleadings rests on two arguments: (1) that Plaintiff's allegations that the July 11, 2024 Order of Dismissal with Prejudice rendered the NCS debt legally unenforceable are mere legal conclusions that the Court need not accept; and (2) that the inaccuracy Plaintiff alleges is not "objectively and readily verifiable" because NCS would have had to adjudicate a complex legal dispute to recognize the debt's unenforceability. Both arguments fail.

On the first point, Plaintiff does not ask this Court to accept a naked legal conclusion. Plaintiff has pleaded specific, concrete facts: a named landlord-tenant action, a specific cause number, a specific court, a specific signed Order of Dismissal with Prejudice entered on a specific date, and specific conduct by NCS, receiving that order

through the dispute process and nevertheless verifying the account as accurate. The legal effect of a dismissal with prejudice is not a "conclusion" conjured by Plaintiff's counsel; it is a well-established proposition of Texas and federal res judicata law that the Court may assess.

On the second point, NCS badly overreads *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 288 (5th Cir. 2025). *Reyes* addressed a dispute over Citibank credit card charges the consumer claimed were fraudulent, where the Fifth Circuit found the reported information was not inaccurate and applied the Second Circuit's reasoning in *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023), a case addressing whether a student loan was the type of debt dischargeable in bankruptcy, where the answer turned on legal questions the CRA could not evaluate from available records. This case is categorically different. Plaintiff presented NCS with a signed, filed, publicly available court order. Whether a dismissal with prejudice entered in the very litigation underlying a collection account affects the reportability of that account is not a question that requires NCS to function as a tribunal. It is the kind of question that a reasonable furnisher, confronted with the court order, should have investigated.

Finally, NCS's judicial estoppel argument fails as a matter of law. Plaintiff's prior response to Equifax's Motion for Judgment on the Pleadings argued, correctly, that the legal complexity of the eviction/debt question precluded resolution against Plaintiff at the pleading stage. NCS now inverts those statements to argue that Plaintiff has "conceded" NCS could not have verified the inaccuracy. But arguing that a question cannot be resolved against a plaintiff at the pleadings stage is not the same as conceding that the defendant could not have verified the inaccuracy. Judicial estoppel does not apply where,

as here, the prior and current positions are not clearly inconsistent, and the court never adopted the prior position as a ruling.

NCS's Motion should be denied.

## II. <u>STANDARD OF REVIEW</u>

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008). The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-movant. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Dismissal is warranted only when the complaint fails to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require certainty; it requires enough factual content to allow the Court to draw the reasonable inference that the defendant is liable. Id. The Court may not resolve contested factual or legal questions against the plaintiff at the pleadings stage.

## III. <u>ARGUMENT</u>

### A. <u>Plaintiff Has Pleaded Specific Facts Supporting an Actionable Inaccuracy — Not Bare Legal Conclusions.</u>

NCS argues that Plaintiff's allegations regarding the effect of the July 11, 2024 Order of Dismissal with Prejudice are unsupported legal conclusions that the Court need not accept. Dkt. 56 at 7-8. That argument mischaracterizes the Complaint.

The Complaint alleges the following specific, concrete facts: (1) Plaintiff previously leased an apartment at Estancia at Morningstar Apartments; (2) Estancia filed a lease-related lawsuit against Plaintiff and co-tenant Malik Pleasant in Denton County

Court at Law No. 2, Cause No. CV-2024-02198-JP; (3) on July 11, 2024, that court entered an Order of Dismissal with Prejudice after disposing of the claims asserted against Plaintiff; (4) NCS furnished a $9,365 collection account to the CRAs arising from that same landlord-tenant relationship; (5) Plaintiff disputed the account and provided the dismissal order to NCS through the CRA dispute process; and (6) NCS, on or about October 23, 2025, verified the account as accurate without correcting, deleting, or modifying the information. (Compl. ¶¶ 24-32, 34, 67-70, 140-143.)

These are factual allegations, not legal conclusions. The legal effect of a dismissal with prejudice, that it constitutes a final adjudication on the merits and carries preclusive effect, is a well-settled principle of both Texas and federal law. *Vikas WSP, Ltd. v. Economy Mud Products Co.,* 23 F.4th 442, 454 (5th Cir. 2022) ("Dismissals with prejudice are final orders with preclusive effect. They end the suit and preclude its re-litigation."). Plaintiff is entitled to plead facts and draw the legal inferences that flow from them. The Court is not required to accept every inference NCS draws in its favor from those facts, but it is required to accept every inference in Plaintiff's favor. *Gonzalez*, 577 F.3d at 603.

NCS also argues that Plaintiff failed to plead sufficient facts showing that the NCS debt was before the Denton County Court at Law. Dkt. 56 at 8. That argument is contradicted by the Complaint itself, which alleges that the NCS collection account arises from Plaintiff's tenancy at Estancia at Morningstar Apartments, the same tenancy and the same landlord-tenant relationship that was the subject of the Denton County litigation, which named Plaintiff as a defendant, and which was dismissed with prejudice. (Compl. ¶¶ 24-28, 71.) Whether the dismissal encompassed or precluded the debt obligation is

precisely the factual and legal question that cannot be resolved against Plaintiff on the face of the pleadings. The Complaint plausibly alleges a connection between the court order and the reported account. That is all *Iqbal* requires at this stage.

NCS further relies on its own footnote 3, a Texas law argument that a dismissal for failure to appear should be without prejudice as a matter of Texas procedural law. Dkt. 56 at 9 n.3. That argument goes to the merits and is inappropriate for resolution at the pleadings stage. *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 707 (Tex. App.—Houston [1st Dist.] 2014), does not establish that the Denton County order was legally erroneous on its face, and NCS cites no authority for the proposition that a dismissal order signed by a sitting judge and entered on the public docket may be disregarded at the pleadings stage because a defendant contends it may have been entered in error. The Order exists. It was provided to NCS. What NCS did with it — nothing — is the conduct at issue.

### B. *Reyes* Does Not Foreclose Plaintiff's § 1681s-2(b) Claim Against NCS.

NCS's central argument is that Plaintiff's dispute did not raise an "objectively and readily verifiable" inaccuracy under *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 288 (5th Cir. 2025), and its progeny. Dkt. 56 at 4-6. That argument overreads *Reyes* and misapplies it to a furnisher's duty under 15 U.S.C. § 1681s-2(b).

First, *Reyes* addressed CRA liability under 15 U.S.C. §§ 1681e(b) and 1681i, not furnisher liability under § 1681s-2(b). The "objectively and readily verifiable" standard was developed in the context of determining what CRAs, entities that assemble and publish large volumes of data from thousands of furnishers, can reasonably be expected to adjudicate during a reinvestigation. Furnishers occupy a fundamentally different

position. A furnisher like NCS has direct, first-hand knowledge of the account it is reporting. NCS is the entity that created and serviced the account. When NCS received the July 11, 2024 dismissal order through the dispute process, it was not being asked to perform the kind of complex multi-party legal analysis that Reyes held CRAs need not undertake. It was being asked to investigate its own account considering a court order from the very litigation underlying that account.

The Fifth Circuit has not held that the "objectively and readily verifiable" standard applicable to CRAs under Reyes applies with equal force to furnishers under § 1681s-2(b). A furnisher's duty under § 1681s-2(b) is to conduct a reasonable investigation after receiving dispute notice, which includes reviewing "all relevant information" provided by the CRA. 15 U.S.C. § 1681s-2(b)(1)(B). A court-filed dismissal order bearing directly on the subject account is plainly "relevant information." Whether NCS's investigation was reasonable considering that document is a factual question for the jury. *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004) (furnisher receiving notice of a dispute from a CRA must conduct a reasonable investigation of its records to determine whether the disputed information can be verified, not merely a cursory review) (persuasive authority; not binding in the Fifth Circuit).

Second, even if *Reyes* applies to furnishers, this case falls squarely within the range of disputes that are objectively and readily verifiable. The dismissal order here is not a contested contractual provision, a complex statutory interpretation, or an equitable defense requiring credibility determinations. It is a signed, filed, publicly recorded court order. Its existence is an objective fact. That the case was dismissed with prejudice is an objective fact. That NCS's collection account arose from the same landlord-tenant

relationship is an objective fact. NCS does not need to function as a tribunal to recognize these facts and investigate whether continued reporting of the account as an active, unpaid, $9,365 collection is accurate considering them.

Third, *Reyes* expressly left open the scope of the "objectively and readily verifiable" standard as applied to specific fact patterns. 140 F.4th at 288-89. The Fifth Circuit did not hold that the existence of a court-entered dismissal order is categorically beyond the range of information a furnisher must consider. Whether the specific dismissal in this case, on a publicly available docket, and furnished directly to NCS through the dispute process, is the kind of information NCS was obligated to investigate is a factual question that cannot be resolved against Plaintiff at the pleadings stage.

The cases NCS relies on in support of the "objectively and readily verifiable" standard are distinguishable. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 267 (2d Cir. 2023) (persuasive authority; not binding in the Fifth Circuit), addressed a dispute over whether a student loan was dischargeable in bankruptcy, a question that turned on the legal characterization of the loan and the express language of the bankruptcy decree. *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) (persuasive authority; not binding in the Fifth Circuit), addressed claims of tortious conduct requiring evaluation of subjective intent. Neither involved a signed court order from a proceeding directly naming the plaintiff as a defendant. *Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921, at *3 (11th Cir. June 9, 2025) (persuasive authority; not binding in the Fifth Circuit), likewise involved no court order, there, the consumer's only proof was a self-generated FBI victim report and his own protestations of innocence, which the court held still fell short of "objectively and readily verifiable" because the credit

reporting agency would have had to independently confirm their veracity. A signed court order entered by a sitting judge, dismissing with prejudice the very litigation underlying the reported debt, presents no comparable verification burden. This case is materially different from those authorities.

**C.** **The Complaint States a Plausible § 1681s-2(b) Claim Based on the Adequacy of NCS's Investigation.**

Even accepting NCS's legal framework, Plaintiff's § 1681s-2(b) claim has an independent factual foundation: the adequacy, or rather, the complete absence, of any reasonable investigation by NCS after receiving dispute notice.

The Complaint alleges that: (1) Plaintiff disputed the NCS account with the CRAs, enclosing the July 11, 2024 Order of Dismissal with Prejudice; (2) the CRAs notified NCS of the dispute and transmitted Plaintiff's supporting documentation, including the court order; (3) NCS received this notice and documentation; (4) on or about October 23, 2025, more than a year after the dismissal with prejudice was entered, NCS verified the account as accurate without taking any corrective action; and (5) NCS failed to report the results of its investigation to all CRAs or to modify, delete, or block the inaccurate information as required by 15 U.S.C. § 1681s-2(b)(1)(D)-(E). (Compl. ¶¶ 29-30, 67-70, 139-144).

Section 1681s-2(b)(1)(B) requires a furnisher to "review all relevant information provided by the consumer reporting agency." A signed court order dismissing with prejudice the very litigation underlying the reported collection account is "relevant information." NCS's verification of the account as accurate, without any apparent review of or response to the court order, is precisely the kind of superficial, rubber-stamp verification that courts have held falls short of the reasonable investigation standard.

Page **8** of **13**

Courts applying § 1681s-2(b) have made clear that a furnisher cannot discharge its § 1681s-2(b) obligations by simply confirming its own records without investigating the documentation a consumer provided. *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d at 431 (furnisher's investigation limited to confirming their own account records, without consulting the underlying documentation, was unreasonable as a matter of law) (persuasive authority; not binding in the Fifth Circuit).

Whether NCS's investigation was reasonable is a factual question that cannot be resolved on the pleadings. The Complaint states a plausible claim that NCS's October 23, 2025 verification, performed in the face of a court dismissal order, over a year after that order was entered, was not a reasonable investigation under § 1681s-2(b).

### D. The Materially Misleading Standard Independently Supports Plaintiff's Claims.

Separate from the question of legal unenforceability, the NCS tradeline was materially misleading because it reported a $9,365 active, unpaid, past-due collection account without any notation of the final judicial disposition of the underlying litigation. The Fifth Circuit has long recognized that a credit entry may be actionably inaccurate not only when it is patently incorrect on its face, but also when it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); see also *Hammer v. Equifax Info. Servs.*, 974 F.3d 564, 567 (5th Cir. 2020).

Any creditor reviewing Plaintiff's credit file would see a $9,365 active collection with no indication that a Texas court had entered a final Order of Dismissal with Prejudice in the underlying landlord-tenant litigation. That presentation creates a materially false picture of Plaintiff's credit risk. NCS's failure to update the tradeline,

even with a notation reflecting the court order, after receiving dispute documentation establishing the order's existence, supports an inference that NCS's reporting was misleading in a way that adversely affected Plaintiff's credit decisions. The PenFed and USAA denials on December 30, 2025 demonstrate that the misleading reporting had exactly the adverse effect the FCRA is designed to prevent. (Compl. ¶¶ 88-99.)

**E. NCS's Judicial Estoppel Argument Fails as a Matter of Law.**

NCS argues that Plaintiff is judicially estopped from arguing that the dismissal order's effect on the debt was objectively and readily verifiable because Plaintiff's response to Equifax's Motion for Judgment on the Pleadings acknowledged the legal complexity of the eviction/debt question. Dkt. 56 at 12-13. This argument fails on both elements of the judicial estoppel doctrine.

Judicial estoppel requires, first, that the estopped party's current position be "clearly inconsistent" with its prior position, and second, that the party "convinced the court to accept that previous position." *Gabarick v. Laurin Mar. (Am.) Inc.,* 753 F.3d 550, 553 (5th Cir. 2014). Neither element is satisfied here.

On the first element, Plaintiff's prior response to Equifax argued that the legal complexity of the FED dismissal/debt question meant it could not be resolved against Plaintiff at the pleadings stage. Dkt. 40 at 11-13. Plaintiff now argues that the same complexity means it cannot be resolved against Plaintiff, here, on the question of whether NCS's investigation was reasonable, at the pleadings stage either. These positions are not inconsistent. They are in the same position: contested questions of law and fact must be resolved through discovery and trial, not at the pleadings stage. Plaintiff's arguments in response to Equifax's motion were directed at Equifax's attempt to resolve a factual and

legal dispute in its favor on the pleadings. Plaintiff's argument here is that NCS cannot accomplish the same thing through the same vehicle.

On the second element, there is no indication in the record that this Court adopted or accepted Plaintiff's position in the Equifax response as a ruling. No order was entered resolving the Equifax motion. Judicial estoppel protects against litigants who successfully convince a court to accept a position and then abandon it. It does not apply to positions advanced in briefing that the court has not yet adjudicated. *Gabarick*, 753 F.3d at 553 (party must have "convinced the court to accept that previous position"). There is no prior ruling here, and therefore no basis for estoppel.

Moreover, NCS selectively quotes from Plaintiff's Equifax response while ignoring the overall thrust of that brief: that the eviction/debt question is complex enough that it cannot be resolved against Plaintiff at the pleadings stage but that the court order Plaintiff provided is an objective, publicly available document that Equifax was obligated to consider. Dkt. 40 at 8-9, 11-13. That is entirely consistent with Plaintiff's position here, that NCS, which has direct knowledge of its own account and received the court order through the dispute process, was obligated to investigate that document and could not simply verify the account without doing so.

**F. <u>Dismissal With Prejudice and Without Leave to Amend Would Be Improper</u>.**
NCS asks the Court to dismiss Plaintiff's claims with prejudice. Even if the Court were inclined to grant any portion of NCS's Motion, which it should not be, dismissal with prejudice without leave to amend would be improper. The Fifth Circuit has held that a district court abuses its discretion in denying leave to amend unless the proposed amendment would be futile because it could not survive a motion to dismiss. *Rio Grande*

*Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). No such certainty exists here. Plaintiff can, at minimum, amplify her allegations regarding the NCS investigation, the content of the dispute documentation transmitted by the CRAs to NCS, and the specific connection between the Denton County litigation and the reported collection account. Dismissal without leave to amend would be an abuse of discretion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Keondrea Johnson respectfully requests that this Court deny Defendant National Credit Systems, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings in its entirety. In the alternative, should the Court find any deficiency in the Complaint, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

Respectfully submitted,

*/s/ Heather Hersh*
Heather Hersh
TX Bar No. 24025426
FCRA Attorneys PLLC
5301 Alpha Rd., Ste. 80-5
Dallas, Texas 75240
Tel: (214) 210-9910
Fax: (469) 669-0786
heather@fcraattorneys.com
*Lead Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2026, a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant National Credit Systems, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Heather Hersh*
Heather Hersh